## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNION OIL COMPANY OF CALIFORNIA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO.  15-5475** |
| **MARGARET MINOR SHAFFER, ET AL.** | **SECTION: "E" (1)** |

## ORDER AND REASONS

This matter is before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Louisiana. Union Oil Company of California; Chevron U.S.A., Inc.; and Chevron MidContinent, L.P. ("Defendants/Appellants") appeal the Bankruptcy Court's October 14, 2015 Order (1) granting in part a motion to remand filed by Margaret Minor Shaffer and Milhado Lee Shaffer ("Plaintiffs/Appellees"), and (2) denying a motion to transfer filed by the Defendants/Appellants. For the reasons that follow, the Court **AFFIRMS** the Bankruptcy Court's October 14, 2015 Order.

## FACTUAL & PROCEDURAL BACKGROUND

The facts underlying this matter, as recited by the Bankruptcy Court, are largely undisputed.[1] Plaintiffs/Appellees, Margaret Minor Shaffer and Milhado Lee Shaffer ("the Shaffers"), own real property in Terrebonne Parish, Louisiana. On August 31, 1944, the Shaffers, through their predecessors,[2] entered into a Louisiana oil and gas lease ("the 1944 Lease") over the property with Frank Wurzlow. Wurzlow assigned the lease to Union Oil Company of California ("UNOCAL") on the same date. UNOCAL conducted oil and gas operations on the Shaffers' property pursuant to the 1944 Lease until 2003.

---

[1] The Bankruptcy Court's October 14, 2015 Order is Record Documents 1-2 and 1-3.
[2] According to the Shaffers' state-court petition, which was filed in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana, on August 14, 2012, the Lessor, and the Shaffers' predecessor-in-title, was C.C. Krumbhaar, Jr., et al.

From approximately 1991 through 1999, while UNOCAL operated on the Shaffers' property, Chevron MidContinent, L.P., through its predecessor Carrollton Resources Corporation, operated a well on the property pursuant to a farmout agreement. Chevron U.S.A., Inc., and Chevron Environmental Management Co. also managed UNOCAL's environmental liabilities during that time by way of a service agreement.

In 2003, UNOCAL assigned a portion of the 1944 Lease to Forest Oil Company. Forest conducted operations on the Shaffers' property until approximately 2010. On February 6, 2012, Forest merged into Sabine Oil & Gas Corporation.

On August 14, 2012, the Shaffers filed suit in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana, against (1) Chevron U.S.A., Inc., (2) Chevron Environmental Management Co., (3) Chevron MidContinent, L.P., (4) UNOCAL, and (5) Sabine Oil & Gas Corporation, among others. The Shaffers sought recovery for damage to their property from "oil and gas exploration, including the operation of waste pits, wells, gathering/commingling facilities; and the operation of a gas plant on a property adjacent to [their] property." On June 22, 2015, UNOCAL obtained leave of court to pursue an indemnity cross-claim against Sabine Oil & Gas Corporation. UNOCAL's cross-claim seeks damages from Sabine pursuant to a contractual indemnity agreement between the two parties. Days after UNOCAL filed its cross-claim against Sabine, the Shaffers dismissed their claims against Sabine.

On July 15, 2015, Sabine filed a voluntary petition for relief under Title 11, Chapter 11, of the United States Bankruptcy Code. Sabine's bankruptcy proceedings were commenced, and remain pending, in the United States Bankruptcy Court for the Southern District of New York.

On August 6, 2015, UNOCAL and the Chevron entities removed the case to the Eastern District of Louisiana, citing Sabine's bankruptcy as the basis for federal subject-matter jurisdiction. On August 19, 2015, the district court referred the case to the United States Bankruptcy Court for the Eastern District of Louisiana.

The Defendants/Appellants thereafter moved to transfer the case to the Southern District of New York, where Sabine's bankruptcy proceedings remain pending. Plaintiffs/Appellees, on the other hand, moved to remand the entire case to the 32nd Judicial District Court, arguing the Bankruptcy Court lacks jurisdiction over the main demand—*i.e.*, the dispute between the Plaintiffs/Appellees and the Defendants/ Appellants, without respect to UNOCAL's cross-claim against Sabine—because the main demand is not "related to" the administration of Sabine's bankruptcy. The Bankruptcy Court denied the motion to transfer and granted in part the motion to remand, as explained *infra*. These rulings are the subject of this appeal.

## STANDARD OF REVIEW, GENERALLY

A Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law de novo. *Century Indem. Co. v. NGC Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985).

## DISCUSSION

As stated above, the Bankruptcy Court (1) granted in part a motion to remand filed by the Plaintiffs/Appellees, and (2) denied the Defendants/Appellants' motion to transfer venue. Both rulings are on appeal, and the Court considers each, in turn.

I.   <u>PRELIMINARY CONSIDERATIONS – JURISDICTION OR VENUE</u>

Preliminarily, the Court must determine which issue to consider first: (1) the Plaintiffs/Appellees' motion to remand for lack of subject-matter jurisdiction, or (2) the Defendants/Appellants' motion to transfer venue. The Defendants/Appellants contend their motion to transfer venue should be considered first, arguing the Bankruptcy Court committed legal error in considering jurisdiction before venue.[3] The Defendants/ Appellants cite the 2006 decision in *Marquette Transportation Co. v. Trinity Marine Products, Inc.*, as support for their position that a motion to transfer venue should be considered and decided prior to addressing subject-matter jurisdiction.[4]

Admittedly, the court in *Marquette* considered the defendants' motion to transfer venue before the plaintiff's motion to remand. In so doing, however, the *Marquette* trial judge noted there was persuasive, but not binding, authority supporting opposite positions—*i.e.*, one position being that jurisdiction must be determined first, and the opposite position being that jurisdiction need not be determined prior to considering a motion to transfer venue.[5] With no guidance from the Fifth Circuit on the issue, and with persuasive authority supporting both approaches, the *Marquette* trial-court judge made a case-specific analysis and determined that, given the procedural posture of the case, it was appropriate to consider the motion to transfer venue prior to assessing subject-matter jurisdiction. The court in *Marquette* reasoned, "because the jurisdictional question in this matter is necessarily intertwined with the pending bankruptcy proceedings, . . . first considering defendants' transfer motions will serve the interest of

---

[3] R. Doc. 6 at 17–18.
[4] R. Doc. 6 at 18 (citing *Woodlands Dev., LLC v. Regions Bank*, No. 13-514, 2013 WL 3233472, at *4 (E.D. La. June 24, 2013) (citing *Marquette Transp. Co. v. Trinity Marine Prods, Inc.*, Nos. 06-0826, 06-827, 06-1281, 06-1282, 2006 WL 2349461, at *2 (E.D. La. Aug. 11, 2006))).
[5] *Marquette*, 2006 WL 2349461, at *2.

judicial economy . . . and the bankruptcy court is best suited to resolve the issue of section 1334 jurisdiction."[6]

Since *Marquette*, other courts in the Fifth Circuit have likewise adopted the case-specific approach when deciding which to consider first, the motion to transfer venue or the motion to remand for lack of subject-matter jurisdiction. In *Briese v. Conoco-Phillips Co.*, a court in the Western District of Louisiana noted that, "[s]ince the 2006 Eastern District ruling in *Marquette*, the Fifth Circuit still has not weighed in on the issue of whether a jurisdictional or venue question should be answered first."[7] The *Briese* court went on to state, "It appears . . . *Marquette* and other cases like it have applied a situation-specific approach to determining which of these matters should be determined first."[8] The court in *Briese* then found that, in light of the specific facts of the case, the jurisdictional issue should be decided first because, for example, (1) the impact of the case on the debtor's estate was minimal; and (2) the defendants' interest in having the case transferred was minimal, as the defendants had a limited interest in the outcome of the bankruptcy proceedings.[9]

Similarly, in *Petroleum Engineers, Inc. v. Axis Onshore, L.P.*, a court in the Middle District of Louisiana recognized, in line with *Marquette* and *Briese*, that whether to address venue or jurisdiction first is a determination that must be made on a case-by-case

---

[6] *Id.*

[7] No. 2:08-cv-1884, 2009 WL 256591, at *3 (W.D. La. Feb. 3, 2009).

[8] *Id.* (citing *Marshall v. Air-Liquide–Big Three, Inc.*, No. 06-9619, 2007 WL 275898, at *1 (E.D. La. Jan. 24, 2007) (noting "[a]s in *Marquette*, the court examines the circumstances of this particular case, and the nature of the bankruptcy proceedings," but concluding that the circumstances favored deciding the jurisdictional issue first); *Orix Finance Corp. v. Nexbank*, No. 3:08-CV-0550-B, 2008 WL 2796069, at *3 (N.D. Tex. July 15, 2008) (determining that transfer of venue prior to determination of jurisdictional issues best served the interest of justice based on factors such as the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness)).

[9] *Id.*

basis.[10] Looking to the specific facts of the case, the *Petroleum Engineers* court concluded that "[t]he circumstances of the instant case and the nature and posture of the Bankruptcy Proceeding support a determination of the jurisdictional issue first."[11] The court's decision to consider jurisdiction before venue was based, in summary, on its conclusion that the impact of the suit on the overall administration of the debtor's estate was minimal.[12]

The facts and circumstances of this case, like *Briese* and *Petroleum Engineers*, justify consideration of jurisdiction before venue. The Plaintiffs/Appellees filed suit in Louisiana state court, and their claims derive entirely from Louisiana state law. As the Bankruptcy Court recognized, this case has been pending in state court for quite some time, and the trial date was fast approaching prior to the case being removed. Discovery is, for the most part, complete. This is a Louisiana case dealing with Louisiana issues and Louisiana property, and the case is, according to the parties, substantially ready for trial. Furthermore, the effect of this case on the administration of Sabine's bankruptcy is minimal. Only UNOCAL, a single defendant, is maintaining a cause of action against Sabine. UNOCAL's cause of action vis-à-vis Sabine is for contractual indemnity. Whether Plaintiffs/Appellees are successful in their main demand against Defendants/Appellants is attenuated from whether Sabine is liable to UNOCAL and, if so, to what extent.

Therefore the Court finds that, based on the facts and circumstances of this case, it is appropriate to consider jurisdiction before venue.

---

[10] No. 11-369-BAJ-DLD, 2011 WL 7083662, at *3 (M.D. La. Dec. 14, 2011).
[11] *Id.*
[12] *Id.*

II.   SUBJECT-MATTER JURISDICTION

a.  *"Related To" Jurisdiction*

The Bankruptcy Court found that it did not have federal subject-matter jurisdiction over Plaintiffs/Appellees' main demand.[13] Specifically, the Bankruptcy Court concluded that Plaintiffs/Appellees' main demand is not "related to" the administration of Sabine's estate and, as such, federal jurisdiction is lacking over the Plaintiffs/Appellees' main demand.[14] For that reason, the Bankruptcy Court remanded Plaintiffs/Appellees' main demand against the Defendants/Appellants to state court. The Bankruptcy Court found it did have "related to" jurisdiction over UNOCAL's cross-claim against Sabine, so it had to consider whether to transfer only that cross-claim, which this Court addresses *infra*.

i.  *Standard of Review*

A bankruptcy court's finding on subject-matter jurisdiction is a legal determination subject to de novo review.[15]

ii.  *Analysis*

Title 28, United States Code, Section 1334, lists the four types of cases over which federal courts have bankruptcy jurisdiction: (1) "cases under title 11"; (2) "proceedings arising under title 11"; (3) proceedings "arising in" a case under title 11; and (4)

---

[13] R. Doc. 1-3 at 14.

[14] R. Doc. 1-3 at 8. The Bankruptcy Court noted the "sole basis for asserting jurisdiction over the claims by Plaintiffs against Defendants is alleged to exist by virtue of 28 U.S.C. § 1334." Finding that, under § 1334, the only jurisdictional basis that arguably could apply to Plaintiffs/Appellees' main demand was "related to" jurisdiction, the Bankruptcy Court concluded that Plaintiffs/Appellees' main demand was not "related to" the administration of Sabine's bankruptcy estate and, for that reason, federal subject-matter jurisdiction was lacking over Plaintiffs/Appellees' main demand.

[15] *In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015) ("We review whether a district or bankruptcy court possessed subject matter jurisdiction over a bankruptcy case de novo."). Stated differently, the bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law de novo. *In re Kevco, Inc.*, 113 F. App'x 29, 30 (5th Cir. 2004); *In re El Paso Apparel Grp., Inc.*, 288 B.R. 757, 759 (W.D. Tex. 2003); *In re Stroh*, 34 F. App'x 562, 563 (9th Cir. 2002). *See also Century Indem. Co. v. NGC Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.2000); *In the Matter of Coston*, 987 F.2d 1096, 1099 (5th Cir. 1992).

proceedings "related to" a case under title 11.[16] The first category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy counterparts) have both original and exclusive jurisdiction.[17] The remaining three categories, over which original but not exclusive federal jurisdiction exists, need not be distinguished. "For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under' title 11. . . . [I]t is necessary only to determine whether a matter is at least 'related to' the bankruptcy."[18]

In this case, the Bankruptcy Court found that Plaintiffs/Appellees' main demand was not "related to" the administration of Sabine's bankruptcy estate and, as a result, that federal bankruptcy jurisdiction was lacking over Plaintiffs/Appellees' main demand. The Bankruptcy Court concluded that: "'Related to' jurisdiction turns on whether the outcome of a proceeding could conceivably have an effect on a debtor's estate. Although this description appears boundless, in truth a bankruptcy court's jurisdiction, while broad, is not limitless."[19] The Bankruptcy Court went on to note that, "[h]istorically, the exercise of 'related to' jurisdiction is most often applied when the debtor is not a party to the litigation, but is in competition with third parties against a common obligor or asset. The most common example involves direct actions against the insurer of the debtor."[20] Finding the instant case does not fit within that scenario, the Bankruptcy Court found "related to" jurisdiction lacking, citing three cases in support: (1) *MacArthur Co. v. Johns-*

---

[16] 28 U.S.C. § 1334. *See also Matter of Wood*, 825 F.2d 90, 92 (5th Cir. 1987).
[17] *Matter of Wood*, 825 F.2d at 92.
[18] *Id.* at 93.
[19] R. Doc. 1-3 at 8 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1994); *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995); *Stern v. Marshall*, 564 U.S. 462 (2011)).
[20] R. Doc. 1-3 at 8.

*Manville Corp.*, 837 F.2d 89 (2d Cir. 1988); (2) *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984); and (3) *In re Federal-Mogul Global*, 282 B.R. 301 (Bankr. D. Del. 2002).[21]

The Second Circuit in *MacArthur* concluded that "related to" jurisdiction existed over the plaintiff's, MacArthur's, claims against the insurer of the debtor, Johns-Manville. The court explained that, if MacArthur's claims against the debtor's insurer were allowed to proceed, a race to the courthouse would ensue between MacArthur and others holding personal-injury claims against Johns-Manville, which could exhaust the debtor's policy limits and deplete the debtor's bankruptcy estate. For that reason, the *MacArthur* court, to protect the equal and fair distribution of the debtor's assets, exercised "related to" jurisdiction over MacArthur's claims against the insurer. Of significance, however, the *MacArthur* court <u>declined</u> to exercise "related to" jurisdiction over third-party claims against the plaintiff, MacArthur, finding the third-party claims were not related to the administration of the debtor's estate, despite the fact that MacArthur could later pursue the debtor for contribution in relation to those third-party claims. The court found that MacArthur could pursue contribution against the debtor in bankruptcy court, as the right of contribution was a contractual right between MacArthur and the debtor alone, which had nothing to do with the third parties asserting claims against MacArthur.[22]

Similarly, in *Pacor, Inc. v. Higgins*, the Third Circuit found "related to" jurisdiction did not exist over claims asserted by third parties to the bankruptcy proceedings against other third parties. In *Pacor*, Higgins sued Pacor, Inc., an asbestos distributor, for personal injuries sustained due to asbestos exposure, and Pacor filed a third-party demand against Johns-Manville, the manufacturer of the asbestos. Manville later entered

---

[21] R. Doc. 1-3 at 9–11.
[22] *See generally MacArthur*, 837 F.2d 89.

bankruptcy, and Pacor removed Higgins' claims against it to federal court, arguing that Higgins' claims were "related to" Manville's bankruptcy. The court disagreed, finding that "related to" subject-matter jurisdiction was lacking:

> [T]he primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" bankruptcy within the meaning of section 1471(b). At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel.

In this case, the Bankruptcy Court, in citing *MacArthur* and *Pacor*, among other cases, concluded "related to" subject-matter jurisdiction does not exist over the Plaintiffs/ Appellees' main demand against UNOCAL and the Chevron Defendants (Defendants/ Appellants), despite the fact that UNOCAL is maintaining a cross-claim for contractual indemnity against Sabine, the debtor. The Bankruptcy Court noted that, "[a]lthough UNOCAL avers that any action against it under the lease by Plaintiffs will trigger Sabine's liability, as the above cases illustrate, the mere fact that Plaintiffs' claims give rise to a cross-claim by a third party against a debtor[] does not render Plaintiffs subject to this Court's jurisdiction."[23] The Bankruptcy Court further noted that Plaintiffs/Appellees are not bringing a claim against Sabine in the main demand, and Sabine's only involvement in this suit is via UNOCAL's cross-claim against Sabine for indemnity. The Bankruptcy Court thus concluded, in line with *MacArthur* and *Pacor*, that the main demand is not "related to" Sabine's bankruptcy.

---

[23] R. Doc. 1-3 at 13. In a similar vein, the Bankruptcy Court also debunked the Defendants/Appellants' argument that, because Plaintiffs/Appellees ask for the removal of some equipment on the leasehold, some of which is owned by Sabine, Plaintiffs/Appellees' main demand will affect the property of the estate. The Bankruptcy Court noted that the "Plaintiffs agreed that they would amend their Petition to seek only monetary damages against UNOCAL for failure to remove the equipment rather than asking for removal of any equipment belonging to Sabine." R. Doc. 1-3 at 14.

Having considered the Bankruptcy Court's decision, the briefs filed by the parties, and the law, the Court finds the Bankruptcy Court's conclusion that Plaintiffs/Appellees' main demand is not "related to" the administration of Sabine's bankruptcy to be correct. The Court affirms the Bankruptcy Court's ruling finding it does not have subject-matter jurisdiction and remanding the Plaintiffs/Appellees' main demand to state court.

   b.  *Equitable Considerations; Section 1452(b)*

Having concluded that federal subject-matter jurisdiction does not exist over the Plaintiffs/Appellees' claims in the main demand, the Bankruptcy Court remanded the main demand to state court for lack of subject-matter jurisdiction. The Bankruptcy Court also concluded that, even if the Bankruptcy Court had jurisdiction over the main demand, remand would be proper on equitable grounds under 28 U.S.C. § 1452(b).[24]

      i.  *Standard of Review*

A bankruptcy court's decision to remand under Section 1452(b) is reviewed for abuse of discretion.[25]

      ii.  *Analysis*

A federal district court or its bankruptcy counterpart "to which a claim or cause of action is removed" may remand "on any equitable ground" under 28 U.S.C. § 1452. When deciding to remand, courts often consider Section 1452(b) in conjunction with Section 1334(c)(1)'s permissive abstention principle.[26] "Together, sections 1452(b) and 1334(c)(1) 'strongly evince a congressional policy that, absent countervailing circumstance, the trial

---

[24] R. Doc. 1-3 at 14 n.32.

[25] *McCarthy v. Prince*, 230 B.R. 414, 416 (B.A.P. 9th Cir. 1999) ("Decisions to remand under 28 U.S.C. § 1452(b) are committed to the sound discretion of the bankruptcy judge and are reviewed for abuse of discretion."). *See also Terral v. SCH Mgmt. Solutions, Inc.*, No Civ.A. 04-1545, 2004 WL 2115486, at *2 (E.D. La. Sept. 21, 2004).

[26] *See, e.g., O'Rourke v. Cairns*, 129 B.R. 87, 90 (E.D. La. 1991); *In re Chiodo*, 88 B.R. 780, 785 (W.D. Tex. 1988) (finding that "abstention and remand of bankruptcy related cases go hand-in-hand").

of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court.'"[27] Courts consider a number of factors in deciding whether to abstain and remand, including:

(1) Effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention;

(2) Extent to which state law issues predominate over bankruptcy issues;

(3) Difficult or unsettled nature of applicable law;

(4) Presence of related proceeding commenced in state court or other non-bankruptcy proceeding;

(5) Jurisdictional basis, if any, other than § 1334;

(6) Degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) The substance rather than the form of an asserted core proceeding;

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;

(9) The burden of the bankruptcy court's docket;

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) The existence of a right to a jury trial;

(12) The presence in the proceeding of non-debtor parties;

(13) Comity; and

(14) Possibility of prejudice to other parties in the action.

---

[27] *Terral*, 2004 WL 2115486, at *3 (quoting *J.T. Thorpe Co.*, No. Civ.A. H-02-4598, 2004 WL 23323005, at *6 (S.D. Tex. June 9, 2003)).

In this case, the Bankruptcy Court, in considering these factors and how they apply to this case, found that:

> 1) remand will not affect the efficient administration of Sabine's estate; 2) the matter involves only state law; 3) the proceeding was commenced in state court; 4) there is no other federal jurisdictional basis for the suit; 5) the action is not core in nature; 6) the main action is only remotely related to the bankruptcy case; 7) severance of the action against the debtor is both possible and will not hamper resolution of the remanded causes of action; 8) nondebtor parties are also involved in the Plaintiffs' demand; 9) the removal of this action involves forum shopping by UNOCAL and the other Defendants; 10) comity weighs in favor of a State court resolution; 11) other parties to the action will not be prejudiced; and 12) Plaintiffs have requested a jury trial. Conversely, 1) the issues presented do not involve difficult or unsettled law; and 2) retention of the case will not create a burden on the bankruptcy court's docket.[28]

This Court agrees that, even if the Bankruptcy Court had subject-matter jurisdiction, remand of the main demand would be appropriate for equitable reasons under Section 1452(b). The Bankruptcy Court did not abuse its discretion when it found that remand would be appropriate under Section 1452(b) given the equities discussed above.

III.   <u>SEVERABILITY</u>

As noted above, the Bankruptcy Court found it had subject-matter jurisdiction over UNOCAL's cross-claim against Sabine but did not have subject-matter jurisdiction over Plaintiffs/Appellees' main demand.[29] The Bankruptcy Court severed UNOCAL's cross-claim against Sabine and remanded the Plaintiffs/Appellees' main demand to state court, retaining jurisdiction, however, over UNOCAL's cross-claim.[30]

When severing UNOCAL's cross-claim against Sabine from the main demand, the Bankruptcy Court considered whether Sabine is an indispensable party to the Plaintiffs/

---

[28] R. Doc. 1-3 at 14 n.32.
[29] *See supra* Section II.a.
[30] R. Doc. 1-3 at 16–17.

Appellees' main demand under Federal Rule of Civil Procedure 19. The Bankruptcy Court concluded Sabine is not an indispensable party under Rule 19, because, if Sabine were an indispensable party, severance of the UNOCAL cross-claim would not have been proper and the UNOCAL cross-claim would also have been remanded to the state court.

    a.  *Standard of Review*

The Fifth Circuit has not identified the appropriate standard of review for Rule 19 determinations. Because the applicable standard of review is unclear, the Court reviews the Bankruptcy Court's Rule 19 determination de novo.[31]

    b.  *Analysis*

The Bankruptcy Court considered the four relevant factors identified in Rule 19 in deciding whether to sever UNOCAL's cross-claim against Sabine from the Plaintiffs/ Appellees' main demand: (1) Would a judgment without Sabine prejudice Sabine or other parties? (2) Can protective provisions in the judgment lessen or avoid prejudice? (3) Can an adequate judgment be rendered? and (4) Will the parties have adequate remedies?

The Bankruptcy Court concluded, *inter alia*, that "State Court is the alternative forum for the claims as the State Court has jurisdiction over all the claims. Although a trial in State Court will not involve Sabine, nor can it address the claims UNOCAL has against Sabine, the severance of that action will not prejudice UNOCAL. Following a resolution of the State case, UNOCAL will retain any and all rights against Sabine and may pursue those in connection with Sabine's bankruptcy case."

Having considered the Bankruptcy Court's decision, the briefs filed by the parties, and the law, the Court finds the Bankruptcy Court's conclusion that Sabine is not an

---

[31] A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law de novo. *Century Indem. Co.*, 208 F.3d at 504. *See also In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). Mixed questions of law and fact are reviewed de novo. *In re U.S. Brass Corp.*, 301 F.3d 296, 306 (5th Cir. 2002).

indispensable party to Plaintiffs/Appellees' main demand to be correct. The Court affirms the Bankruptcy Court's decision severing UNOCAL's cross-claim against Sabine from the Plaintiffs/Appellees' main demand.

IV.   VENUE OF UNOCAL'S CROSS-CLAIM

Because this Court affirms the Bankruptcy Court's decision to remand Plaintiffs/Appellees' main demand to state court, Defendants/Appellants' motion to transfer venue to the Southern District of New York is moot with respect to the main demand.

The only claim with respect to which the motion to transfer venue is relevant is UNOCAL's cross-claim against Sabine. In severing UNOCAL's cross-claim against Sabine from the Plaintiffs/Appellees' main demand, the Bankruptcy Court retained jurisdiction over the cross-claim, staying the cross-claim pending the outcome of Plaintiffs/Appellees' main demand in state court. On appeal, this Court considers whether it was error for the Bankruptcy Court to retain UNOCAL's cross-claim rather than transfer the cross-claim to the Southern District of New York.

a.   *Standard of Review*

A bankruptcy court's denial of a motion to transfer venue is reviewed for abuse of discretion.[32]

b.   *Analysis*

The Defendants/Appellants contend the Bankruptcy Court "abused its discretion in refusing to transfer this matter to the Southern District of New York to be adjudicated with Sabine's bankruptcy case."[33] According to the Defendants/Appellants, "UNOCAL's claims against Sabine and Plaintiffs' claims against all defendants involve complicated

---

[32] *See, e.g., Marbury-Pattillo Constr. Co. Inc. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir. 1974); *see also In re Cavu/Rock Prop. Project I, LLC*, 530 B.R. 349, 354 (W.D. Tex. 2015).
[33] R. Doc. 6 at 16.

issues that are inextricably intertwined with Sabine's bankruptcy proceedings,"[34] and "[b]ecause the United States District Court for the Southern District of New York has exclusive jurisdiction over the debtor, Sabine's, property, the interests of justice (including the interests of consistency in judgments, efficiency in litigating claims just one time when possible, and close oversight over the extent of a bankrupt party's participation in multi-party discovery) weigh heavily in favor of transferring venue of this civil action to the Southern District of New York."[35]

In support, the Defendants/Appellants cite case law holding that "it is fundamental that there is a 'strong presumption that proceedings 'related to' a bankruptcy case should be transferred to the district where the bankruptcy proceedings are pending."[36] The Appellants thus argue the Bankruptcy Court abused its discretion by "ignoring the 'home' bankruptcy presumption and failing to give sufficient consideration to the debtor, Sabine's[,] interest in having all litigation 'arising in' or 'related to' its bankruptcy coordinated with the bankruptcy proceedings."[37]

Having considered the Bankruptcy Court's decision, the briefs filed by the parties, and the law, the Court finds the Bankruptcy Court did not abuse its discretion in denying the motion to transfer UNOCAL's cross-claim to the Southern District of New York.

As noted above, Defendants/Appellants contend the Bankruptcy Court abused its discretion when it failed to consider and give weight to the "home" bankruptcy court presumption, which would see this case transferred to the Southern District of New York.

---

[34] R. Doc. 6 at 16.
[35] R. Doc. 6 at 16.
[36] R. Doc. 6 at 18 (internal quotation marks omitted) (quoting *Woodlands Dev., LLC v. Regions Bank*, No. 13-514, 2013 WL 3233472, at *4 (E.D. La. June 24, 2013) (citing *Marquette Transp. Co. v. Trinity Marine Prods., Inc.*, No. 06-0826, 2006 WL 2349461, at *2 (E.D. La. Aug. 11, 2006); *Bayou Steel Corp. v. Boltex Mfg. Co.*, NO. 03-1045, 2003 WL 21276338, at *1 (E.D. La. June 2, 2003))).
[37] R. Doc. 6 at 18.

The Court finds this argument overstated, at best. UNOCAL's cross-claim against Sabine is not a "core" matter but is only "related to" the administration of Sabine's bankruptcy estate under 28 U.S.C. § 1334.[38] The court in *Longhorn Partners Pipeline, L.P. v. KM Liquids Terminals, L.L.C.*, noted that the majority of the cases recognizing the "home court" presumption involve "core" matters, and the *Longhorn* court found that the "home court" presumption is not warranted in "related to" cases.[39] Also, the court in *Petroleum Engineers, Inc. v. Axis Onshore, L.P.*, explicitly questioned the applicability of the "home court" presumption in a "related to" matter, recognizing that the case's impact on the debtor's estate was "minimal."[40]  The court opined that, because the case was only "related to" the administration of the debtor's bankruptcy and not a "core" proceeding, the "home court" presumption likely did not apply.

Even if the "home court" presumption were applicable, courts in the Fifth Circuit have held the presumption is but one factor among many that should be considered in deciding whether to transfer venue to another court. Regardless of whether transfer is sought pursuant to Section 1412 or Section 1404, the principal considerations are the convenience of the parties and the interests of justice.[41] Other factors to be considered include:

---

[38] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Matter of Wood*, 825 F.2d at 97. "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but . . . it is [a] non-core proceeding." *Id*. In this case, although UNOCAL's indemnity cross-claim against Sabine, if successful, will likely affect Sabine's bankruptcy estate, it is not a claim that could exist only in the context of a bankruptcy case. For that reason, UNOCAL's cross-claim against Sabine is a non-core proceeding.

[39] 408 B.R. 90, 102 (Bankr. S.D. Tex. 2009) (citing *In re Continental Air Lines, Inc.*, 61 B.R. 758, 770 & n.25 (S.D. Tex. 1986) (noting that the home court presumption is based on the idea that "administrative matters," or core matters, are "properly handled in a single, centralized forum," but the same principle does not apply to "truly civil litigation in the historic sense," or non-core matters)).

[40] No. 11-369-BAJ-DLD, 2011 WL 7083662, at *4 (M.D. La. Dec. 14, 2011).

[41] *See, e.g., Bush Seismic Tech LLC v. Am. Gem Society*, No. 2:14-cv-1809-JRG, 2016 WL 1545855, at *2 (E.D. Tex. Apr. 15, 2015) ("The same general analysis applies to transfers under § 1404(a) and § 1412.");

(a) Efficiency and economics of estate administration; (b) Presumption in favor of the "home court"; (c) Judicial economy and efficiency; (d) Fairness and the ability to receive a fair trial; (e) The state's interest in having local controversies decided within its borders; and (f) Plaintiff's original choice of forum.[42]

Courts have held that, "[w]hile the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy, this presumption may be overcome by consideration of the same sort of factors as those considered under section 1404(a)," such as the convenience of the parties and the interest of justice.[43]

The Bankruptcy Court, in deciding the motion to transfer, noted that, under Title 28, United States Code, Section 1412, "A district court *may* transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."[44] That is, the Bankruptcy Court emphasized that the decision to transfer venue to another court is discretionary. The Bankruptcy Court went on to deny the motion to transfer, noting that the Plaintiffs/Appellees' main demand and UNOCAL's cross-claim involve Louisiana state-law issues, Louisiana property, and Louisiana oil-and-gas leases.[45] The Bankruptcy Court also noted that the main demand and the cross-claim were pending in Louisiana state court for approximately three years and the trial date was fast approaching prior to removal.[46]

---

*LSREF2 Baron, LLC v. Aguilar*, No. 3:12-cv-1242-M, 2013 WL 230381, at *3 (N.D. Tex. Jan. 18, 2013); *Borger Prop., Inc. v. Auer Corp.*, No. 10-03171, 2010 WL 3932393, at *3 (S.D. Tex. Oct. 4, 2010); *Bayou Steel Corp.*, 2003 WL 21276338, at *1.

[42] *In re Think3, Inc.*, 529 B.R. 147, 209 (Bankr. W.D. Tex. 2015) (citing *In re BDRC Lofts, Ltd.*, No. 12-11559-CAG, 2013 WL 395129, at *2 (Bankr. W.D. Tex. Jan. 31, 2013); *In re Moss*, 249 B.R. 411, 425 (Bankr. N.D. Tex. 2000); *In re Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045 (1980). *See also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 44884430, at *4–8 (N.D. Tex. Dec. 17, 2009).

[43] *Washington State Bank v. Turnage*, No. 6:11-0004, 2011 WL 1561440, at *3 (W.D. La. Apr. 25, 2011).

[44] R. Doc. 1-3 at 15.

[45] R. Doc. 1-3 at 16 (citations omitted).

[46] R. Doc. 1-3 at 16 (citations omitted).

The Bankruptcy Court clearly considered, among other factors, the convenience of the parties, the interest of justice, and the interests of judicial economy and efficiency. With these considerations in mind, the Bankruptcy Court determined that this Louisiana-centric case should not be shipped to the far-away forum of New York for trial. The Defendants/Appellants nevertheless argue, for example, that the Bankruptcy Court's assessment of "judicial efficiency failed to consider the bankruptcy estate's strong interest in achieving consistent judgments."[47] The Defendants/Appellants contend that Plaintiffs/ Appellees' claims and UNOCAL's cross-claim should be transferred to the Southern District of New York because Sabine identified Plaintiffs' now-dismissed claims against Sabine, as well as UNOCAL's cross-claim for indemnity against Sabine, as "material actions or proceedings pending or threatened against the Debtors or their properties."[48] According to the Defendants/Appellants, "[g]iven the size of the claims at issue in this civil action and Sabine's acknowledgement that they are 'material' to its bankruptcy case, these claims should be transferred to the Southern District of New York where they can be adjudicated in coordination with the claims-allowance process that will occur in the Bankruptcy Case."[49]

Even accepting the Defendants/Appellants' arguments as true, the Court cannot conclude the Bankruptcy Court abused its discretion in denying the motion to transfer venue. The Bankruptcy Court considered the relevant factors and determined that Plaintiffs/Appellees' main demand and UNOCAL's cross-claim against Sabine, which sound in Louisiana state law, were filed in Louisiana state court, and concern property situated in Terrebonne Parish, Louisiana, should be adjudicated in Louisiana. This

---

[47] R. Doc. 6 at 21.
[48] R. Doc. 6 at 21.
[49] R. Doc. 6 at 21.

decision was within the Bankruptcy Court's discretion and was not abuse thereof. In summary, the Court finds no basis upon which to conclude that the Bankruptcy Court abused its discretion in denying the motion to transfer UNOCAL's cross-claim to the Southern District of New York. Because the Bankruptcy Court's decision denying the motion to transfer was not an abuse of discretion, the decision is affirmed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's October 14, 2015 Order.

**New Orleans, Louisiana, this 5th day of August, 2016.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**